220

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHELLE WEST,

        Petitioner,        CRIM. NO. 93-CR-50028-02
                                CIVIL NO. 98-CV-40130
v.                                   HON. PAUL V. GADOLA

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ANSWER AND BRIEF IN RESPONSE TO
## PETITIONER'S MOTION UNDER TITLE 28,
## UNITED STATES CODE, SECTION 2255

# VOLUME 1 OF 2

1998 MAY 28 P 1:51

D2
386



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE WEST,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

_____/

CRIM. NO. 93-CR-50028-02
CIVIL NO.  98-CV-40130
HON. PAUL V. GADOLA

ANSWER AND BRIEF IN RESPONSE TO
PETITIONER'S MOTION UNDER TITLE 28,
UNITED STATES CODE, SECTION 2255

Now comes the United States of America, by and through its undersigned attorneys,

and does hereby request this honorable court to deny petitioner's motion under Title 28,

United States Code, Section 2255, for the reasons stated in the accompanying brief.

BRIEF

This case was originally assigned to Honorable Stewart A. Newblatt.  Ms. West was

represented by Attorney David I. Goldstein.  After a jury trial, she was convicted of

conspiracy to distribute controlled substances (count two), drug-related murder/aiding and

abetting (count three), false statements to federally insured institution (count five), and money

laundering (count six) on the third superseding indictment.  Attachment one is a copy of the

third superseding indictment.

Attachment two is a copy (without its attachments) of the government's letter of February 1, 1994 to the United States Probation Department summarizing the case and the trial.  Attachment three is a copy of the government's brief on appeal in Sixth Circuit numbers 94-1538/1727.  The statement, at pp. 3-19, also summarizes the evidence offered during the trial.   The issues raised by the petitioner on direct appeal were: (1) the district court's supplemental instruction regarding the meaning of "drug-related murder" (attachment three at pp. 39-42); (2) whether there was sufficient evidence to support the conclusion that the homicide occurred while she was engaging in drug conspiracy (attachment three at pp. 42-45); and, (3) the execution of a search warrant in her cell to retrieve threatening letters from a co-defendant (attachment three at pp. 45-51).  Attachment four is a copy of the unpublished Sixth Circuit opinion denying petitioner's and co-defendant Olee Robinson's challenges to their convictions.

<u>Issues Raised by Petitioner</u>

The petitioner has raised the following issues:

1.  She says that the pre-*Ovalle* jury that convicted her, designed to <u>increase</u> minority representation[1], violated her rights.

2.  Under the heading of a claim of ineffective assistance of counsel, petitioner complains:

> A.  That she was prejudiced by the search in her cell for a threatening letter
>
> from co-defendant Olee Robinson, an issue analogous to third one raised on

---

[1]  Petitioner is African-American.



direct appeal, and says count six (the money laundering count) would have been severed if her attorney did a better job pursuing the issue.

B. That Mr. Goldstein should have objected to the district court's response to a jury question about the meaning of "drug-related murder", along with the original charge on the offense.

C. That previous counsel should have objected to the drug quantity for which she was held accountable at sentencing, and that her base offense level should be changed from 40 to 38 due to a retroactive change in the guidelines.

3. Petitioner says that the government violated the *Jencks Act* by not ordering and providing plea transcripts of government witnesses Edward Osborne and Anthony Bowling.

4. Petitioner says the government's lawyer agreed that she should not have been convicted of count five (false statement).

<u>Summary of Response</u>

Most of petitioner's issues were directly or indirectly handled on appeal.  She has waived her Ovalle challenge.  Her argument that her lawyer should have challenged a system designed to increased minority representation while she, herself, was a minority, does not make sense.  Her claim of prejudice from the search of her jail cell on October 22, 1993 remains unsubstantiated, particularly in view of the hundreds of pieces of information accumulated against her (largely by search warrant on May 3, 1993) and the availability of the witnesses against her well before the search.

Petitioner has not demonstrated that the district court improperly instructed the jury

regarding "drug-related murder"[2] and has not shown sufficient prejudice to undermine her conviction for aiding and abetting the crime.

In discussing the drug quantity for which she was held accountable, petitioner speaks in generalities and fails to even attempt to demonstrate that the amount of drugs for which she was held responsible was wrong.  However, she is correct in saying that the base offense level of 40 has been retroactively reduced to 38.  Nevertheless, petitioner fails to mention that even with the retroactive application of a base offense level of 38, her guidelines remain life as she had leadership <u>and</u> obstruction enhancements, too.

Petitioner's complaint of a *Jencks Act* violation is not legally or factually justified.  She cites no authority for the proposition that pleas of guilty are *Jencks Act*.  Further, her representation that Edward Osborne testified as to trafficking in 1993 (inconsistent with his plea) cites a reference to a tape made while he was <u>cooperating</u> in 1993.  The fact that he consented to make a tape while cooperating in 1993 does not mean he was trafficking at that time.  Finally, petitioner's complaint that the government agreed that she really should not have been convicted of count five is based on a passing remark from Mr. Goldstein and not otherwise substantiated in the record.

## Legal Discussion

Petitioner's motion is brought pursuant to 28 U.S.C. §2255.  It provides in part:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to be released

---

[2] Despite petitioner's suggestion to the contrary, the Sixth Circuit did not hold that the jury was improperly instructed, but that it "may have been incorrect."  Attachment four at p. 23.

> upon the ground that the sentence was imposed in violation of the
> Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the sentence
> was in excess of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court which imposed
> the sentence to vacate, set aside or correct the sentence.

A prisoner may seek relief from a conviction and/or sentence under 28 U.S.C. § 2255

if the prisoner can demonstrate that there are flaws in the conviction or sentence which are

jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of

justice. *United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.) (per curiam), *cert. denied*,

508 U.S. 943, 113 S.Ct. 2424 (1993); *Boyer v. United States*, 55 F.3d 296 (7th Cir.), *cert.*

*denied*, 116 S.Ct. 268 (1995). Such relief, however, is not available if the prisoner failed to

raise the claim on direct appeal or in a prior collateral proceeding (if any), unless he or she

establishes sufficient cause for, and prejudice resulting from, the failure to raise the claim

earlier. Rule 9(b), Rules Governing 28 U.S.C. § 2255 Proceedings; *McCleskey v. Zant*, 499

U.S. 467, 111 S.Ct. 1454, 1467-71 (1991); *United States v. Frady*, 456 U.S. 152, 164, 102

S.Ct. 1584 (1982); *Boyer*, 55 F.3d at 298.

A § 2255 motion does not serve as a substitute for bringing a direct criminal appeal,

and a defendant raising an issue for the first time in such a motion must usually show cause for

his failure to do so and actual prejudice from the violations that constitute the basis for his

motion. *Reed v. Farley*, 512 U.S. 339, 114 S.Ct. 2291, 2300 (1994); *United States v. Frady*,

456 U.S. at 167-69, 102 S.Ct. At 1594-95; *United States v. Allison*, 59 F.3d 43, 46 (6th

Cir.), *cert. denied*, 116 S.Ct. 548 (1995); *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th

Cir. 1993).

Rule 8.  Evidentiary Hearing

> (a) Determination by court.  If the motion has not been dismissed at a previous stage in the proceeding, the judge, after the answer is filed and any transcripts or records of prior court actions in the matter are in his possession, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required.  If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice dictates.

Further, a district court is not required to set forth its findings of fact and conclusions of law if the record conclusively shows that the petitioner is not entitled to relief.  *United States v. Edwards*, 711 F.2d 633, 634 (5th Cir. 1983); *United States v. Counts*, 691 F.2d 348, 349 (7th Cir. 1982).

The well-known case of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), sets forth the two-part standard of review in ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless the defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.  (Emphasis added).

In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Court stated:

> In order to establish ineffective representation, the defendant must prove both incompetence and prejudice.  There is a strong presumption that counsel's performance falls within the "wide range of professional assistance"; the defendant bears the burden of proving that counsel's representation was unreasonable

under prevailing professional norms and that the challenged
action was not sound strategy. The reasonableness of counsel's
performance is to be evaluated from counsel's perspective at the
time of the alleged error in light of all the circumstances, and the
standard of review is highly deferential. The defendant shows
that he was prejudiced by his attorney's ineffectiveness by
demonstrating that "there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different." And in determining the existence vel
non of prejudice, the court "must consider the totality of the
evidence before the judge or jury."

*Id.* At 381 (quoting *Strickland*) (citations and footnote omitted).

Petitioner carries a heavy burden, for a strong presumption exists that counsel afforded

reasonable professional assistance; "that is, the defendant must overcome the presumption that,

under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Strickland*, 466 U.S. at 689; *Kimmelman*, 477 U.S. at 384. Tactical decisions by counsel are

not to be second guessed by a reviewing court.

A lawyer is presumed competent and the burden rests on the defendant to demonstrate a

constitutional violation. *United States v. Cronic*, 466 U.S. 648 (1984). An attorney is not

required to present a baseless defense or to create one which does not exist. *Krist v. Foltz*,

804 F.2d 944, 946-47 (6th Cir. 1986) (citing *Cronic*). Although the issue of ineffective

assistance of counsel is a mixed question of law and fact, the district court's findings of fact

are subject to the clearly erroneous standard of review. *Meeks v. Bergen*, 749 F.2d 322, 327

(6th Cir. 1984).

Petitioner's claim that his counsel was ineffective for failing to raise specific legal

theories or arguments at sentencing is spurious as nothing that his counsel did nor failed to do

precluded the petitioner from raising these issues in his direct appeal.  *See United States v. Smith*, 918 F.2d 664, 668-69 (6th Cir.), *cert. denied*, 498 U.S. 1125 (1991) (even though defense counsel did not dispute the application issue at sentencing nor allege any factual inaccuracy in the presentence report, defendant could appeal sentence on ground that it was imposed in violation of law or imposed a result of incorrect application of Sentencing Guidelines).

Furthermore, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486-87, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986), the Supreme Court held:

> We think . . . that the question of cause for a procedural default does not turn on whether counsel may have made.  So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.  Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.

*Murray*, 477 U.S. at 488, 106 S.Ct. at 2645.

### Discussion of Issues

1. *Ovalle* Issue-- Petitioner claims that the grand and petit juries were selected in violation of *United States v. Ovalle*, 136 F.3d 1092 (6th Cir. 1998).  See attachment five, a copy of the *Ovalle* case.  Petitioner waived her challenge due to her failure to raise the issue in

a pretrial motion as she did not raise the issue before the district court as a pretrial motion

under Fed.R.Crim.P. 12(b)(2).  At best, a co-defendant, Olee Robinson, complained of the

racial composition of the jury panel, after it was being selected.[3]  See attachment six at TR 7-9

and 118-26.  This did not preserve a challenge to the district's plan which removed non-

African Americans from the jury wheel.

In the *Ovalle* case, this Court emphasized the importance of making a timely challenge

to the jury selection plan.  Challenges to the constitutionality of the selection process for either

grand and petit juries must be raised prior to trial.  *Ovalle*, 136 F.3d 1092, 1107.  In *Ovalle*,

two of the defendants (John and Alexander Ovalle) had not raised a challenge to the jury

selection plan until the case was on appeal.  Citing Supreme Court precedent and the Federal

Rules of Criminal Procedure, the Sixth Circuit held that, but for the fact that their co-

defendants *had* raised the issue and permitted the government and the district court to fully

address it, the Ovalles would not have been entitled to relief.  ("Had Canales and Garcia raised

these objections prior to trial, all of the appellants would be barred from making such an

objections for the first time on appeal or in a collateral proceeding attacking their convictions

since the objection would be waived by the failure to object to trial.  *See* Fed.R.Crim.P.

12(b)(2).").  *Ovalle*, at 1109.

Like the Ovalles, petitioner cannot show cause for his failure to raise a jury plan

challenge prior to trial.  To the contrary, the 1992 jury plan was a publicly available by

administrative order of the court, filed as order number 92-AO-035.  *Ovalle*,  at 1095; *see*

_____

[3] Even defense counsel for Olee Robinson, Christopher Andreoff, acknowledged that the
issue had not been raised timely.  Attachment six at TR. 125.

*generally*, 28 United States Code, Section 1863(a) (requiring jury plans to be filed with the judicial council for the circuit and the Administrative Office of the United States Courts). The implementation of paragraph VIII.B. was also carried out by way of publicly available administrative orders. *See, e.g., Ovalle*, at 1095-96. (If the need had arisen, the government would have proved that these administrative orders were routinely posted in a display case on the first floor of the federal courthouse in Detroit.) Thus, this case is like *Shotwell Manufacturing v. United States*, 371 U.S. 341 (1973), in which the Supreme Court held that there was insufficient cause for failing to assert the violation of Rule 12(b)(2) because the systemic challenges to the district's selection process were based on facts that were notorious and available to the defendants before the trial. *Id.* At 363 (noting that the same method had been followed for years and "[i]nquiry as to the system employed could have been made at any time").

The co-defendant's argument below was not on point. Instead of arguing that the jury plan violated the Fifth Amendment rights of non-African Americans, a co-defendant, not the petitioner, merely noted that there were not as many African Americans in the courtroom as he thought there should be. Co-defendant did not explain how a single instance of perceived under representation of African Americans in a jury venire would entitle him to any action by the court, nor did he request any specific relief.

More important, the co-defendant did not ever alert the court to any problem with paragraph VIII.B. of the jury plan (or with any part of the plan for that matter). To the contrary, a co-defendant was complaining about a perceived problem that paragraph VIII.B.

had in fact ameliorated by design--the under representation of African Americans.

The pretrial motion requirement of Rule 12(b), Fed.R.Crim.P., is intended to give the trial court an opportunity to address the issues. *Ovalle*, at 1108. A general motion that does not specifically identify the type of error later asserted on appeal is unsatisfactory. For example, this Court has held that a challenge to the validity of a search warrant on the ground that the confidential source's information was uncorroborated did not preserve a later claim that the affidavit also failed to establish probable cause for a "pattern" of racketeering activity. *United States v. Bonds*, 12 F.3d 540, 569 (6th Cir. 1993). *See also United States v. Buchanon*, 72 F.3d 1217, 1226-27 (6th Cir. 1995) (pretrial motion alleging improper seizure of defendant was not specific enough to preserve later allegation that seizure occurred before dog sniff, rather than before dog alert). Petitioner did not even file a general challenge to the jury plan.[4]

The United States District Court for the Eastern District of Michigan has faced this very "preservation of a challenge to paragraph VIII.B." issue in a slightly different context. In *United States v. Greene,* 971 F. Supp. 1117 (E.D.Mich. 1997), the defendant attempted to amend her new trial motion by adding a challenge to paragraph VIII.B. The court needed to determine whether the amendment (submitted after the time limit for filing new trial motions had expired) was sufficiently similar to the original motion (which *had* been timely filed).[5]

---

[4] In fact, co-defendant did not really make a motion for the court to do anything.

[5] The district court determined that Greene would have been entitled to challenge paragraph VIII.B. if she included the argument in a timely-filed new trial motion, even though she had not raised that issue before trial. Under *Ovalle*, even that challenge would be untimely.

Greene's original motion alleged that her Sixth Amendment right to a jury drawn from a fair cross-section of the community was violated by an under representation of African Americans (the general type of issue that Spearman raised on the morning of trial). The district court ruled that the subsequent challenge to paragraph VIII.B. was different from the claim made in the original motion.

> The challenge Greene made in her Supplemental Motion is distinctly different from her initial one, both in the facts it relies upon and in its legal grounding. Rather than merely adding factual support for her allegations of violation of her Sixth Amendment rights, in her Supplemental Motion she argues that violation of Fifth Amendment equal protection rights of third parties (rather than herself) due to the exclusion of whites from the qualified wheel, not the alleged systematic exclusion of blacks which formed the basis of her Sixth Amendment argument.

*Greene*, 971 F. Supp. at 1141. For precisely these same reasons, co-defendant's observations about the allegedly insufficient number of African Americans in the courtroom on the morning of trial is "distinctly different" from the challenge considered in *Ovalle*. Co-defendant did not alert the district court to the defect in paragraph VIII.B., and therefore did not give the court a valid reason to stay the trial until such a problem could be fixed.

Furthermore, in *Ovalle* the defendants filed timely written motions to dismiss their indictments based on defects in the grand jury selection process. The grand jury that returned the petitioner's indictment and her trial jury were selected under the same jury plan. If the co-defendant expected the district court to treat his motion as including an attack on paragraph VIII.B., he would have included a challenge to the indictment and he would not have waited until the morning of trial to mount his challenge. But the co-defendant never made any allegations about the grand jury selection process. Petitioner also did not comply with the

strict time limits for raising a challenge under the Jury Selection and Service Act. *Ovalle*, at 1095.

A final test for determining whether defendant adequately raised a challenge to paragraph VIII.B. is to consider how petitioner would have reacted if the district judge had granted her the type of relief dictated by the *Ovalle* ruling. The Sixth Circuit ruled in *Ovalle* that the four defendants were entitled to be retried by a jury selected under a plan that does not remove non-African Americans from the qualified wheel. If Judge Newblatt had announced that he was going to stay petitioner's trial until a jury could be selected under a plan that does not use subtraction, petitioner surely would have complained that this was not responsive to her concern. Thus, Judge Newblatt can not be faulted for failing to address paragraph VIII.B. prior to trial, and petitioner has waived that challenge.

This issue has significant implications. Prior to *Ovalle*, many defendants in the Eastern District of Michigan raised the same argument as West, that there was an under representation of African Americans in the jury venires (that is, those who actually showed up for jury duty). (It was this very problem that had prompted the court to adopt paragraph VIII.B. in 1992.) Thus, when the district court in its administrative capacity began to consider whether the subtraction method in paragraph VIII.B. should be eliminated, the criminal defense bar overwhelmingly opposed the move. Defendants such as West chose to put their own interests in a jury pool that more accurately reflected the racial make-up of the community ahead of the interests of the prospective non-African American jurors who were removed from the wheel. Especially under these circumstances, no defendant should be allowed to wait until after trial

has begun to assert the interests of the excluded jurors.

The fact that a jury challenge was not raised by prior counsel is no surprise. Certainly, the Court cannot conclude that failure to raise this issue was unreasonable per se. Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), there were two requirements to an ineffective assistance of counsel claim: proof that counsel's performance was so deficient that he was not functioning as "counsel"; and proof that such deficient performance prejudiced defendant. Because a successful challenge to the jury plan would merely have postponed the inevitable, a decision not to raise the issue would be reasonable. *See Gates v. Zant*, 863 F.2d 1492, 1497 n.3 (11th Cir. 1989). And it is not surprising that a defendant, through counsel, would be willing to overlook a violation of the rights of third parties (the removed potential jurors) if the result of that violation was a jury venire consisting of qualified persons who better reflect the community from which they are drawn. *See Glasser v. United States*, 315 U.S. 60, 86 (1942) ("the proper functioning of the jury system, and, indeed, our democracy itself, requires that the jury be a body truly representative of the community, and not the organ of any special group or class").

Even assuming that petitioner can establish cause for failure to raise the jury challenge prior to trial, she still falls short on the prejudice prong. In *Ovalle* this Court stated, "[e]ven assuming that cause could be shown, the Ovalles still would not be able to demonstrate actual prejudice." 136 F.3d at 1107. The Court observed that while prejudice is ordinarily presumed when there is an allegation of discrimination in the grand jury composition, the Supreme Court has held that this presumption "is not inconsistent with a holding that actual prejudice must be

shown in order to obtain relief from a statutorily provided waiver for failure to assert it in a timely manner." 136 F.3d at 1107, (quoting *Davis v. United States*, 411 U.S. 233, 245 (1973)). *Ovalle* is therefore dispositive on this issue.

This is not a situation where a timely objection would have resulted, for example, in the exclusion of incriminating inadmissible evidence or access to exculpatory evidence. If defense counsel had raised the jury challenge prior to trial, it would have merely postponed the proceedings until new juries could be empaneled. *See Ovalle*, 136 F.3d at 1098, n.8. Although a number of non-African Americans were denied their personal right to be considered for jury service under the 1992 plan, the remaining jurors were no less qualified or competent. *Cf. Shotwell Manufacturing*, 371 U.S. at 363 (discussing absence of prejudice and noting that there is no suggestion that the jury selection claims "go to the individual qualifications of any seated grand or petit juror"). Further, the most significant effect the subtraction method had on the representativeness of the jury pool was an improvement, by eliminating the under representation of African-Americans. Even in cases where that could not be said, courts have found no actual prejudice. *See e.g., Shotwell Manufacturing*, 371 U.S. at 363 (plan failed to secure fair cross section); *United States v. Tarascio*, 15 F.3d 225, 226 (2d Cir. 1994) (defendant could not demonstrate prejudice from computer error that prevented jury service by residents of the two cities with the largest number of minorities in the division). Thus, even with respect to an ineffective assistance of counsel claim, this Court can affirm due to the absence of prejudice. *See generally United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir.) (because there was no prejudice, court need not decide whether counsel's performance



was deficient), *cert. denied*, 117 S.Ct. 444 (1996).

2A.  Severance and Search Issue--No Prejudice to Petitioner--Petitioner complains that she was prejudiced by a search of her jail cell and that her lawyer should have more aggressively attempted to sever count six, the false statement count.  She apparently threats these issues together as it was her theory that the government amended count six based on information received from the search of her cell for a threatening letter from her co-defendant.

This complaint needs to be taken in context.  Petitioner was charged with drug-related murder (count three) and conspiracy to distribute controlled substances (count two), along with false statement (count five) and money laundering (count six).  She received life terms on the murder and drug charges.  Secondly, this issue has been exhaustively reviewed on direct appeal and petitioner has still shown no prejudice to her.  A 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances such as an intervening change in the law.  *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996).

Due to the fact that defendant is raising the same issue in this 2255 (and still has not shown prejudice), the government will include portions of its appeal brief in this brief:

> **VII.  THE EXECUTION OF A SEARCH WARRANT ON WEST'S CELL TO OBTAIN THREATENING LETTERS SENT BY CO-DEFENDANT ROBINSON DID NOT VIOLATE HER SIXTH AMENDMENT RIGHTS.**
>
> On November 9, 1993, the court held an evidentiary hearing on West's claims that the government violated her Sixth Amendment rights and intruded into her attorney/client relationship by obtaining a search warrant to search her cell for the purpose of obtaining confidential communications between



West and her counsel. (Attorney/Court Colloquy at TR I:3-5).
When West complained that co-defendant Robinson was sending
her letters which contained veiled threats to harm her daughter,
but refused to turn them over to prison officials, the government
obtained a search warrant[6] to search West's cell for these letters.
(Michael Powers at TR II:6-11, 17; Reinecke at TR I:58-61).
West argued that the prosecutor should have asked her counsel
for the letters.  The prosecutor explained that he *had*  first
contacted defense counsel, who was not available that day.
(Attorney/Court Colloquy at TR I: 26-29).  After the hearing, the
court denied her motion to dismiss the indictment. (R 154: Order
at ¶ 7; District Court at TR XIX:51).

Although West claims that the government changed Count
VI based on information it obtained in the search, the evidence is
to the contrary.[7]  At the hearing, Agent Reinecke explained that
on October 22, 1993, after learning about the existence of the
Robinson letters, he executed a search warrant on West's prison
cell. (Reinecke at TR I:44-47, 58-61, 110-11).  As Agent
Reinecke cautioned everyone involved in the search to avoid any
documents dealing with attorney/client matters, they did not read
anything that looked like a legal document nor did they learn
anything about trial strategy or tactics. (Reinecke at TR I:47-51).

Reinecke was first alerted to a possible defect in Count VI
by two IRS agents who cautioned him not to rely on the amount
listed as a down payment as actual cash. (Reinecke at TR I:51-
52).  He first learned of the actual mistake when he met with
Chaptini of Mitchell Buick on November 1, 1993.  As with other
witnesses, the agents had called Chaptini at an earlier date to
schedule an interview in preparation for trial.  Without any
prompting from the agents, in an effort to show that he was being

---

[6] Defendant does not allege a Fourth Amendment violation.  Ordinarily, an inmate has no
reasonable expectation of privacy as to her jail cell or its contents. *Hudson v. Palmer*,  468 U.S.
518, 525-26 (1984).  Out of an abundance of caution, agents obtained a search warrant before
searching West's cell for evidence of letters authored by Robinson and threatening her child.

[7] Both the new and the amended version charged West with laundering drug proceeds in
the purchase of a car.  Originally, Count VI charged drug proceeds in the form of a $1,600 down
payment, while the amended Count VI charged drug proceeds in the form of $2,514.40 in
payments on the car. (R 63 & 130: Second and Third Superseding Indictments, respectively).

even-handed, Chaptini told the agents that he had spoken with the defense and he voluntarily showed the agents the letter he had sent confirming that the $1600 down payment was in the form of a rebate. (Reinecke at TR I:52-55, 58; Government Counsel at TR I:107-09; Chaptini at TR X: 150-51). On November 5, 1993, the grand jury returned a Third Superseding Indictment, amending Count VI. (R. 130: Third Superseding Indictment).

Although West alleges a violation of her Sixth Amendment rights, in response to the evidence that the agents did not see any privileged material, she has offered only her own unsupported speculation. The evidence demonstrated that the agents learned about the error in Count VI from Chaptini of Mitchell Buick, not from anything found in West's cell. In response to West's contention that the search of her cell was a pretext, the evidence demonstrated that West had informed prison officials that Robinson had sent her letters with an implicit threat against her daughter. Thus, the district court's factual findings that no violation of her Sixth Amendment rights occurred are not clearly erroneous.

Defendant's reliance upon this Court's decision in *Bishop v. Rose*, 701 F.2d 1150 (6th Cir. 1983) is misplaced. In *Bishop*, 701 F.2d at 1154, relying on *Weatherford v. Bursey*, 429 U.S. 545 (1977), this Court acknowledged that "every intrusion by the prosecution into the confidential relationship between a criminal defendant and his counsel does not constitute a Sixth Amendment violation." Rather, this Court held that a violation had occurred because the state had used confidential information it obtained in the search of defendant's cell for impeachment purposes at trial.

In *United States v. Steele*, 727 F.2d 580, 585 (6th Cir.), *cert. denied*, 467 U.S. 1209 (1984), again relying on *Weatherford*, 429 U.S. at 554, this Court identified four factors used to evaluate whether an invasion of the attorney/client privilege occurs:

> 1) whether the presence of the informant was
> purposely caused by the government in order to
> garner confidential, privileged information, or
> whether the presence of the informant was the

result of other inadvertent occurrences; 2) whether the government obtained, directly or indirectly, any evidence which was used at trial as a result of the informant's intrusion; 3) whether any information gained by the informant's intrusion was used in any other manner to the substantial detriment of the defendant; and 4) whether the details about trial preparations were learned by the government.

As the evidence does not establish these factors, West has failed to demonstrate a violation of her Sixth Amendment rights.

Even if she had proven an intentional invasion of her Sixth Amendment rights, before she is entitled to any remedy, West must prove prejudice. *Steele*, 727 F.2d at 586. As the government proved that they learned of the error when Chaptini voluntarily offered the information as to the rebate, she has shown no prejudice.

## VIII.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING WEST'S MOTION FOR A CONTINUANCE AS TO COUNT VI OF THE INDICTMENT.

On November 9, 1993, defendant West asked the district court to sever count six from the indictment and to grant her a continuance, alleging prejudice because of insufficient time to prepare a defense to the charge as amended.  The prosecutor asserted that defendant was not prejudiced because defendant already had the documentary evidence which supported the change in the charge.  Although the district judge stated that he was inclined to grant the motion due to short notice to defendant, he postponed his decision. (District Court at TR I:113-20). When defendant West later renewed her motion, the court again took it under advisement. (Attorney/Court Colloquy at TR IV:14-15).

The government presented its proofs as to Counts V and VI through the November 30, 1993 testimony of Chaptini.  Trial was in recess for the entire week before this evidence. (Docket Sheet).  Defendant West did not renew her motion, either before

or after Chaptini testified.  West had no objection to admission of the records relative to the car purchase.  (Attorney/Court Colloquy at TR X:119-20).  She cross-examined Chaptini without objecting to his testimony. (Chaptini at TR X:136-51).

While arguing her final Rule 29 motion, West reminded the district court that it had "never actually made a firm ruling." When the Court denied the motion, West did not request further argument on the issue (Attorney/Court Colloquy at TR XVIII 323-24, TR XIX:51).  On appeal, without any authority to support her position, West contends that the court's action was an abuse of discretion which denied her a right to present a defense.

This Court reviews a district court's denial of a continuance under an abuse of discretion standard. *United States v. Peters*, 15 F.3d 540, 545 (6th Cir.), *cert. denied* 115 S.Ct. 219 (1994); *United States v. Frost*, 914 F.2d 756, 764-65 (6th Cir. 1990).  Whether a district court abused its discretion depends on the circumstances of the case, including the reasons defendant gives for requesting a continuance. *Frost*, 914 F.2d at 765; *United States v. Wirsing*, 719 F.2d 859, 866 (6th Cir. 1983).

To prove that the district court abused its discretion, defendant must show prejudice, "a showing that the continuance would have made relevant witnesses available, or would have added something to the defense." *Peters*, 15 F.3d at 545, *quoting Wirsing*, 719 F.2d at 866; *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir. 1984) (no continuance where new counsel retained 8 days before trial).

In the present case, West has failed to show prejudice. Although she alleges she had insufficient time to investigate, she has not identified what an investigation might have added to her defense.  Rather, as the prosecutor noted, the amended charge added nothing to the case, as West already had the Mitchell Buick documents used to prove her payments.  Although the amended indictment occurred four days before trial, the evidence as to Count VI did not occur until more than three weeks later on November 30, 1993, after trial had been recessed for a week.

Thus, this case is more like the circumstances present in

*United States v. Grossman*, 843 F.2d 78 (2nd Cir. 1988), *cert. denied*, 488 U.S. 1040 (1987). In *Grossman*, defendant alleged he was prejudiced by the filing of an amended indictment two business days before trial was scheduled. In rejecting defendant's contention that he did not have timely notice to defend himself against statements included in the new indictment, the court noted that as defendant had previously obtained full discovery as to these statements, the superseding indictment did not substantially alter the case. 843 F.2d at 84.

Defendant may not rest on unsupported allegations of insufficient time as, "Every lawyer on the losing side of a case probably feels that if he had had a little more time he might have done something else which would have been helpful." *Martin*, 740 F.2d at 1361 (citation omitted).

(Attachment three at pp. 45-51).

The Sixth Circuit Court of Appeals agreed with the government:

### G. Sixth Amendment Violation in the Search of West's Jail Cell

West argues that the FBI search of her cell violated her Sixth Amendment right to counsel because it "invaded" documents subject to the attorney-client privilege. There are two major problems with this argument: (1) the FBI official in charge testified that no attorney-client materials had been touched; and (2) even if there had been an intrusion into privileged materials, West was unable to show any resulting prejudice.

Unfortunately, it does not appear that the district court made any factual findings regarding West's Sixth Amendment claim. It just denied the motion. Nevertheless, the defense failed to present any evidence to counter FBI Agent Reinecke's unequivocal testimony that all attorney-client documents were avoided. On appeal, too, West's Sixth Amendment arguments are predicated upon mere supposition as to the types of documents the FBI agents might have seen. In the absence of any evidence to the contrary, the district court was certainly entitled to credit the government's assertion that it did not view any privileged materials during the search.

Furthermore, even if we assume that the searching officers did view confidential information, as alleged by West, we are still unable to find any reversible error. West cannot point to any privileged information derived from the search that was used at trial, with the possible exception of the information regarding her "down payment" on the Honda Civic (later revealed to be a rebate).[8]  As a result, an application of the factors set forth in *United States v. Steele*, 727 F.2d 580, 585-86 (6th Cir.), *cert. denied*, 467 U.S. 1209 (1984), leads us to the conclusion that there was no Sixth Amendment violation. In *Steele*, the court followed the path laid down by the Supreme Court's opinion in *Weatherford v. Bursey*, 429 U.S. 545 (1977), identifying four relevant factors to the Sixth Amendment inquiry:

> 1) whether the [intrusion] was purposely caused by the government in order to garner confidential, privileged information, or whether the [intrusion] was the result of other inadvertent occurrences; 2) whether the government obtained, directly or indirectly, any evidence which was used at trial as the result of the . . . intrusion; 3) whether any information gained by the . . . intrusion was used in any other manner to the substantial detriment of the defendant; and 4) whether the details about trial preparations were learned by the government.

In this case, the ostensible purpose of the government's search was not to obtain confidential information, only to investigate alleged threats by Robinson; as already noted, no privileged information from the search was used at trial, aside (possibly) from West's Honda "down payment" defense; it does not appear that privileged information was used in any other manner detrimental to West and no details of confidential trial

---

[8]  According to West, she was prejudiced when the government was allowed to correct its error in the indictment, which had referred to the $1,600 figure as a "down payment." But this information was arguably not even privileged, attorney-client material. The government points out that the document revealing the rebate's true nature had been delivered to West by her mother, who had received it from the car dealer. In addition, as noted below, the government denied that it learned about this error in the indictment through the search, claiming instead that it found out from the car dealer himself, who had already been contacted for an investigative interview.

preparations were learned (again, apart from the Honda issue). In other words, the only possible prejudice specifically identified by West is the information regarding the Honda down payment. Yet the FBI agent, upon direct questioning by the district court, appeared to satisfy the court that this information was discovered through independent means: discussions with the Honda dealer which had already been scheduled to take place. J.A. at 1389-90. Moreover, it is difficult to see how this information could have had any material impact on the outcome of the trial. The government had informed the district court that the same evidence of money laundering through the Honda was going to be introduced, anyway. J.A. at 1535. Without a more convincing showing of prejudice, we can only affirm the district court's denial of West's Sixth Amendment motion.

## H. Denial of West's Motion to Sever Count Six

West contends that she was denied an adequate opportunity to defend herself against Count Six of the indictment (money laundering through the Honda Civic), first because the government amended the count only four days before trial, and second because the district court misled her into thinking the count would be severed. Neither of these arguments is very convincing.

First, as the government points out, the district court's decision to deny defendant a continuance (here, in the form of a severance) is reviewed for an abuse of discretion. *United States v. Peters*, 15 F.3d 540, 545 (6th Cir.), *cert. denied*, 115 S.Ct. 219(1994). Further, in order to demonstrate an abuse of discretion, the defendant must ordinarily show prejudice. *Id.* West is simply unable to show how the government's short notice affected her defense in any adverse way. Count Six had merely been changed to allege $2,514.40 in installment payments instead of $1,600 in a down payment, and West already had all the financial documents relating to the Honda Civic in her possession. Of course, the government's correction of its mistake regarding the down payment may have damaged West's "defense" that the government had made such a mistake in the first place. But this has nothing to do with the poor timing of the government's amendment. It is significant also that the district court denied defendant's motion at the end of a 1½-month trial.

West effectively had more than just four days to prepare a "new" defense to the amended count; she had over six weeks, yet she did nothing to refute the government's case. Under the circumstances, and especially in light of the total absence of prejudice, it can hardly be suggested that the district court abused its discretion.

Second, to the extent that West relied on the district court's inclination to grant the motion, such reliance was unreasonable. The district court stated quite clearly that it was leaving room, albeit very little room, for the government to persuade it not to grant the motion. If West's lawyer refrained from preparing a defense on Count Six based on the district court's statements, then he would effectively have been gambling on the government's inability to present a compelling argument to resist the motion. This cannot be an acceptable excuse. West's attorney should not have stood silently by while the government presented its evidence on Count Six, if the only reason for so standing was that he was counting on a severance. Moreover, it is again significant that the district court denied the motion at the end of the trial, after having observed the entire case and having gotten a better idea of whether a severance/continuance on Count Six would have been of any use to West. There is no reversible error to be found here.

(Opinion, attachment four, at pp. 19-22).

Even at this point the petitioner speculates that the government intruded on her attorney-client privilege. At best, she says that some records seen by the agents during the search of her jail cell may have compromised her defense. However, she provides no specificity, fails to deal with the mountain of evidence against her, and ignores the fact that the FBI agent testified to the contrary. Even if she provides an "affidavit," her word is so subject to impeachment as to the worthless. A hearing was already conducted regarding this matter. Petitioner could have testified and presented evidence. She should not be allowed to rehash



the same thing.[9]

   2B.  Drug-Related Murder Charge Jury Instructions --Petitioner complains that there

was no evidence presented that she engaged in drug distribution related to the murder or that

she engaged in a continuing criminal enterprise related to the murder.  She complains that her

lawyer did not make a challenge on this issue.

   This issue was extensively discussed before the Sixth Circuit Court of Appeals.  The

appeals court found the evidence was sufficient to uphold this conviction.  "With respect to

West, her conviction [for Drug-Related Homicide] is *easily* upheld as an aider and abettor to

Robinson.  (Emphasis added).  Attachment four, Opinion, at p. 16.  At best, petitioner is

raising a different twist on the same issue.  Still, she has not shown that the instruction was

wrong or that she was prejudiced.  As was noted, above, a 2255 motion may not be used to

relitigate an issue that was raised on appeal absent highly exceptional circumstances such as an

intervening change in the law.  *DuPont,* 76 F.3d at 110.

   While this issue was before the Sixth Circuit Court of Appeals, the government, in

issues V and VI, made the following arguments:

## V.  ANSWERING A JURY QUESTION BY INSTRUCTING THAT "DRUG RELATED

---

   [9] In her brief, defendant argues that the government's lawyer uses jail cell raids to
obtain defense strategy.  She cites *Spearman v. United States,* 860 F. Supp. 1234, 1242
(E.D.Mich. 1994).  However, this court did not find this to be in the case in *Spearman,* either
in the published opinion or in the subsequent non-published opinion, attachment seven,
discussing the jail cell search.  Further, petitioner does not seem to realize that Mr. Spearman
has subsequently been convicted of continuing criminal enterprise, two counts of drug-related
murder, two counts of use of firearms during and in relation to felony drug offenses, dealing
in firearms without a license, and conspiracy to provide false statements in connection with the
acquisition of firearms.

MURDER" MEANS INTENTIONALLY
ACTING TO ACHIEVE THE PURPOSES OF
THE CCE OR DRUG CONSPIRACY WAS
NOT ERROR, ESPECIALLY WHEN ALL
PARTIES AGREED.

Defendants allege that the court erred in responding to the
jury's question as to the meaning of "drug related" murder in
count III, which charged a violation of 21 U.S.C. § 848(e). At
the time, however, they agreed with the court's response. (April
6, 1995 Hearing at TR 2-5; R. 282: Order Expanding Record).

During a break in the jury charge, counsel for Robinson
and West remarked that in its charge on count III, the court had
omitted the definition of "in furtherance of" which it had agreed
to give at their request. The court reinstructed the jury:

> THE COURT ... I want to go back to Count III
> and tell you something that I had neglected
> inadvertently to tell you.
>
> Count III is the drug related murder count that I
> advised you before. And I'm going to read to you those
> elements that are required because I omitted an
> explanation and they only make any sense if I were to
> read the elements with the explanation. ...
>
> Now we're dealing with Count III, the drug
> related murder count. To find any one of the defendants
> guilty of the drug related murder charge, the Government
> must prove each of the following elements beyond a
> reasonable doubt.
>
> * * * *
>
> And third, that the defendant took these
> actions while engaging in or working in
> furtherance of either a continuing criminal
> enterprise or a conspiracy to distribute over five
> kilograms of cocaine.
>
> *Working in furtherance of a continuing criminal*

> *enterprise or a conspiracy, means to intentionally do any act or take any action to achieve the continuing criminal enterprise or the conspiracy.*

(Jury Charge at TR XIX: 39-41) (added explanation in italics).[10]

In its introductory paragraph explaining the need to reinstruct on one of the counts because of the omission of a definition of the legal terms involved, the court repeatedly used the phrase "drug related" murder to help orient the jury as to which count (Count III) the instruction applied.  Apparently confused by the court's use of this phrase, which was not part of the statutory language that the indictment used to describe the offense, the jury sent out a note, "Could you please further clarify what constitutes `drug related' in Count 3?"[11]  After conferring with the court, all parties consented to the district court's response, "In answer to your question above, I refer you to subparagraph (C) on page 38 of the instructions as well as subparagraphs (A) and (B) on the same page." (R. 282: Order and Attached Note).  Part C, the third element of the offense, explained the necessary connection between each defendant's conduct and the CCE or drug conspiracy. (R 159: Jury Instructions at 38-39).

When a defendant objects, a court's response to a jury inquiry is reviewed for abuse of discretion. *United States v. Mitchell*, 67 F.3d 1248, 1252 (6th Cir. 1995).  When no objection is made, review is for plain error. *United States v. Combs*, 33 F.3d 667, 669 (6th Cir. 1994).  As defendants

---

[10] The court charged the first two elements as follows:

First, that the defendant is guilty of the crime charged in either count I, continuing criminal enterprise, with regard to defendant Robinson only; or Count II, conspiracy to distribute a controlled substance of the indictment.

Second, that the defendant intentionally killed, counseled, commanded, induced, procured, or caused the intentional killing of Sherman Adam Christian or aided or abetted in doing so.

[11] Thus, contrary to defendant West's assertion, the jury did not ask the court to define "in furtherance of."



agreed with the court's response that to be a drug related murder meant a murder while "engaging in or working in furtherance of" which "means to intentionally do any act or take any action to achieve the purposes of the continuing criminal enterprise or the conspiracy," they have waived review of this issue, so no error occurred. *United States v. Olano*, 507 U.S. 725, 732-33 (1993) ("Deviation from a legal rule is 'error' unless the rule has been waived."); *United States v. Nagi*, 947 F.2d 211, 213 (6th Cir. 1991) ("the district court's failure to address the asserted misapplication is not `plain error' because both sides agreed to the application"), *cert. denied*, 504 U.S. 958 (1992); *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990) ("An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course"); *See also United States v. Scarborough*, 43 F.3d 1021, 1025 (6th Cir. 1994); *United States v. August*, 984 F.2d 705, 712 (6th Cir. 1992), *cert. denied*, 114 S.Ct. 158 (1993).

Nor can they prevail on the merits. Their reliance on *United States v. Nunez*, 889 F.2d 1564 (6th Cir. 1989) is misplaced. In *Nunez*, 889 F.2d at 1566-68, this Court held a court abused its discretion when it "refused to answer two written questions, but reread its earlier instruction on the law of conspiracy," despite the jury's confusion over the "important legal issue" of whether a government agent could be considered a co-conspirator. In this case, by contrast, when the jury expressed confusion about what constituted "drug related" murder, the court answered the question by referring them to the section that explained that the murder must be while "engaging in or in furtherance of" and defined "in furtherance of." No error occurred where defendants did not object; the instruction was a correct statement of the law; and it answered the jury's question. *Combs*, 33 F.3d at 669-70.

## VI. VIEWED IN THE LIGHT MOST FAVORABLE TO THE JURY'S VERDICT, SUFFICIENT EVIDENCE SUPPORTED ITS FINDING THAT THE MURDER WAS CONNECTED TO THE CCE OR DRUG CONSPIRACY.

Defendants allege that insufficient evidence proved that the homicide occurred while they were engaging in, or in furtherance of, the CCE or the drug conspiracy. Thus, while they do not dispute that they committed the murder, they claim it was not "drug related." In essence, they argue that as they had other motives for killing Christian, the proofs did not show that the murder was drug related. Defendants' argument is one best addressed to a jury, and not to an appellate court where, when confronted with a choice of inferences to be drawn from the evidence, all the inferences are taken in the light most favorable to the jury's verdict. *Jackson*, 443 U.S. at 319. As the district court reasoned in rejecting this same challenge:

> ... defendant claims consistently with his position throughout the trial that there was no evidence that the murder, even if committed, was drug related, but rather, the evidence showed that it was done in revenge for an armed robbery or for insurance proceeds. The testimony revealed that the robbery referred to was of drug proceeds from those who had sold them. There was ample evidence from which the jury could conclude that the murder was drug related even if insurance proceeds were sought as part of the scheme, or if it provided the victims of the robbery revenge therefor. In short, ... the evidence supported that the murder was committed while defendant was in the drug conspiracy and in furtherance thereof.

(R. 194: Opinion).

The proofs demonstrated a connection between the murder and the CCE and drug conspiracies. As discussed, *supra*, the court charged that to commit the murder "in furtherance of a continuing criminal enterprise or a conspiracy, means to intentionally do any act or take any action to achieve the continuing criminal enterprise or the conspiracy."[12] *See United States v. Whiting*, 771 F.Supp. 476, 477 (D.Mass. 1991). It means "working to promote or advance the interests of" a CCE or drug conspiracy. *United States v. Cooper*, 19 F.3d 1154,

---

[12] 21 U.S.C. § 848(c) defines when a defendant engages in a CCE.

1165 (7th Cir. 1994). The term "in furtherance of" is interpreted consistent with the analysis applied to the same term in Fed.R.Evid. 801(d)(2)(E). *Id.* at 1165, *affirming, United States v. Cooper,* 754 F.Supp. 617, 626-27 (N.D.Ill. 1990); *United States v. Pitera,* 795 F.Supp. 546, 554 (E.D.N.Y.), *aff'd,* 986 F.2d 499 (2nd Cir. 1992).

This Court has broadly construed when acts or statements are "in furtherance of" a conspiracy, noting that they need not actually further the conspiracy, "It is enough that they be intended to promote the conspiratorial objectives." *United States v. Hamilton,* 689 F.2d 1262, 1270 (6th Cir. 1982), *cert. denied,* 459 U.S. 1117 (1983); *see United States v. Blakeney,* 942 F.2d 1001, 1020-21 (6th Cir.), *cert. denied,* 502 U.S. 1008 (1991) (collecting cases).

In the present case, the evidence demonstrated that Christian had robbed Robinson and West of $4,000 plus $20,000 in drug proceeds from the recent sale of a kilogram of cocaine. Robinson told a federal agent that Christian was involved in a narcotics organization. He told both Osborne and Bowling that Christian would not get away with it and that he would get him. Bowling admitted that the murder would make someone dealing drugs with Robinson think twice before double crossing Robinson.

Although Robinson and West had other motives for killing Christian, including personal animosity and collecting insurance proceeds, they also wanted to punish Christian, a fellow drug dealer, for stealing their drug money and to warn others of the consequences of interfering with their drug organization.[13] *Cf United States v. McCullah,* 1996 WL 44147, *10 (10th Cir. Feb. 5, 1996) (murder "in furtherance of" when it sent message drug organization would stop at nothing to recover stolen drugs); *Cooper,* 19 F.3d at 1165 (murder of associate who laundered drug proceeds and threatened organization's future by turning informant); *see also United States v. Chandler,* 996 F.2d 1073, 1097 (11th Cir. 1993) (rejecting contention that jury might have

---

[13] Robinson also alleges that at the time of the murder, he was not involved in distribution of drugs. Evidence is to the contrary. Also, as part of the CCE, he organized West's drug distribution.



convicted defendant due to evidence of victim's abusive treatment of his family), *cert. denied*, 114 S.Ct. 2724 (1994). Thus, sufficient evidence supported their convictions.

(Government's appeal brief, attachment three, pp. 38-45).

Despite petitioner's arguments to the contrary, the Sixth Circuit did not rule that the trial court's instructions were wrong. Rather, the Sixth Circuit merely said that a portion of the instructions may have been incorrect. In its sufficiency of the evidence as to the drug-related homicide discussion at pp. 16-18 of attachment four, the court began by saying that Ms. West's "...conviction [as to drug-related homicide] is easily upheld as an aider and abettor to Robinson. After discussing the evidence, the court discussed the jury instructions:

### F. Failure to Give Supplemental Instruction on "Drug-Related Murder"

Defendants argue that it was plain error not to give a supplemental instruction to the jury when it asked for clarification as to the meaning of "drug-related." This argument must fail because the district court's answer was an appropriate response. The jury asked about a phrase--"drug-related murder"--that was not really a part of the statutory offense but merely shorthand for a more cumbersome description--i.e., killing while "engaging in or working in furtherance of a continuing criminal enterprise, or [while] engaging in an offense punishable under section 841(b)(1)(A)." 212 U.S.C. § 848(e)(1)(A). The court's answer properly directed the jury back to the part of the instruction dealing with this more cumbersome description. Thus, unlike the situation in *United States v. Nunez*, 889 F.2d 1564 (6th Cir. 1989), the jury's inquiry in this case was "fully covered in the court's instruction," and "a reference to or rereading of the instructions" did "suffice." *Id.* At 1569. The court merely had to explain that "drug-related" meant the same thing as what the instruction already stated in "subparagraph (C) on page 38 of the Instructions." J.A. at 405. The court made explicit a link between two parts of the jury instruction that may not have been adequately linked before. Certainly, there was nothing approaching plain error in this.

\* \* \* \*

## I. Jury Instruction on Drug-Related Homicide

Defendants' final claim is that the district court deviated in two important ways from the terms of 21 U.S.C. § 848(e)(1)(A) when it instructed the jury regarding the drug-related homicide offense: (1) it allowed the jurors to convict if they found the defendants killed (or aided and abetted in killing) Christian while "working in furtherance of" an offense punishable under § 841(b)(1)(A), when in fact the homicide statute only covers defendants who are "engaging in" such an offense; (2) it allowed the jurors to convict if they found that the defendants killed while engaging in a drug conspiracy, when in fact the homicide statute only covers defendants engaged in the actual manufacturing and distribution of drugs.[14]

These arguments are certainly worth a second look. Section 848(e)(1)(A) criminalizes killing by "any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title."[15] The "working in furtherance of" phrase thus appears to apply only to continuing criminal enterprises, <u>not</u> offenses "punishable under section 841(b)(1)(A)." So when the district court informed the jurors that they could convict if they found action "in furtherance of" the latter type of offense, it <u>may have been incorrect</u>. Furthermore, § 841(b)(1)(A) prohibits the manufacturing, distribution, and dispensing of certain quantities of certain drugs, not conspiracy to manufacture, distribute, or dispense those drugs-- conspiracy is criminalized in § 846. Therefore, when the district court told the jurors they could convict if the defendants engaged in (or worked in furtherance of) a drug conspiracy, instead of an offense punishable only under § 841(b)(1)(A), <u>it may have been mistaken there, too</u>.

---

[14] Robinson has raised this issue for the first time in a supplemental brief to this court. At best, then, we review it only for plain error. *See* Fed.R.Crim.P. 52(b). West has chosen to adopt all arguments of her co-defendant that might be applicable to her.

[15] § 960(b)(1) pertains to the illegal import and export of drugs--something not relevant to the instant case.

Nevertheless, we are persuaded that the error, if any, was harmless, at least with respect to Robinson. The jury ultimately convicted Robinson of <u>both</u> engaging in a CCE and conspiring to distribute cocaine, and the conspiracy was a lesser-included offense of the CCE. *See Rutledge v. United States*, 116 S.Ct. 1241, 1247 (1996) ("[I]t is appropriate to characterize § 846 as a lesser included offense of § 848."). As a result, even if the jury found that Christian's murder was done while <u>working in furtherance</u> of a § 841(b)(1)(A) offense, and even if this, by itself, was not a proper basis for convicting under § 848(e), the jury would necessarily also have found that the killing was done while working in furtherance of a CCE, and this <u>is</u> enough to convict under § 848(e). Similarly, even if the jury found that the killing was done while engaging in or working in furtherance of a <u>drug conspiracy</u>, and even if this, by itself, might have been insufficient, the jury would necessarily also have found that the act was done while engaging in or working in furtherance of a <u>CCE</u>, and this, again, is sufficient. Anything that contributed to the drug conspiracy contributed to the CCE in equal measure. This must be the case, because the CCE in Count One of the indictment expressly incorporated the conspiracy in Count Two as the predicate offense. Because Robinson cannot point to any drug conspiracy for which he was convicted that was not a part of the CCE for which he was convicted, he has at most pointed to harmless error, and we must affirm. *See* Fed.R.Crim.P. 52(a).

The same harmless-error analysis does not apply to West, because she was not charged with working in furtherance of a CCE. Nonetheless, even if the district court might have confused "engaging in," "working in furtherance of," § 841(b)(1)(A), and conspiracy, West may still be convicted as an aider and abettor to Robinson under 18 U.S.C. § 2. For this reason, we have focused our sufficiency analysis in part II.E, *supra*, on whether West aided and abetted Robinson, rather than whether she participated in the homicide in a more straightforward fashion.

In short, assuming arguendo that the district court's jury instructions on drug-related homicide were error, they were harmless error, not plain error. They did not affect the jury's ultimate determination that Robinson acted "in furtherance of a continuing criminal enterprise," and they did not affect the determination that West either directly participated or aided and abetted in Christian's execution.

(Some emphasis added; Opinion of Sixth Circuit Court of Appeals attachment four, pp. 18-19 and

22-25).

Petitioner complains that there was no evidence presented that she was engaged in drug distribution related to the murder or that she was engaged in a CCE related to the murder. However, as noted in the government's appeal brief, attachment three at pp. 4-15, the defendant was a close co-conspirator with Olee Robinson engaged in drug distribution and aiding and abetting in it[16] and Robinson's CCE. The Sixth Circuit specifically found that petitioner's conviction should be upheld as an aider and abettor. Attachment four, p. 16; p. 18, n. 1; and at pp. 24-25: "They [the jury instructions] did not affect the jury's ultimate determination that Robinson acted 'in furtherance of a continuing criminal enterprise,' and they did not affect the determination that West either directly participated or aided and abetted in Christian's execution." With this explicit holding that the instructions would not have altered the outcome, petitioner's ineffective assistance of counsel claim regarding the jury instructions must fail.[17]

2C. Drug Quantity Issue -- Petitioner was held accountable for 500 or more kilograms of cocaine resulting in a base offense level of 40. Attachment eight, sentencing transcript at p. 40. Petitioner also received a four-point leadership role under U.S.S.G. §3B1.1(a) and a two-point

---

[16] In *United States v. Villarreal*, 963 F.2d 725, 730 (5th Cir.), *cert. denied*, 113 S.Ct. 353 (1992), the court found it clear form the language of 21 U.S.C. 848(e) that Congress intended to include liability under 18 U.S.C. 2 as a basis for prosecution under the statute. The court held that the statutory language "counsels, commands, induces, procures, or causes" of 21 U.S.C. 848(e) applies to aiders and abettors as well as to supervisors and organizers.

[17] Petitioner also complains that she could not have been convicted of a murder while charged with a Title 21, United States Code, Sections 846 and 841(b)(1)(A), conspiracy. Although this issue, too, has been waived and need not be reached substantively to decide the motion, the Sixth Circuit has upheld such a conviction. *United States v. Snow*, 48 F.3d 198, 200-01 (6th Cir. 1995).

obstruction enhancement under U.S.S.G. §3C1.1, resulting in a total offense level of 46.  *Id.*

Attachment nine is a copy of the judgment.

Prior to calculating the guidelines, the government filed a supplemental brief regarding

guidelines issues which extensively documented the quantity of narcotics for which the petitioner

should have been held responsible.  The brief quoted from the trial transcripts, documenting the

petitioner's responsibility for 500 or more kilograms of cocaine.  See attachment ten.

In her motion, petitioner complains that "...drug quantities were guesstimated based upon

generalities, and that prior counsel failed to make a coherent document argued in writing for the

court to follow."  (Brief at p. 12).  This is a curious argument as petitioner's current counsel

makes no effort whatsoever to explain why the government's brief and the trial court were wrong.

Accusing others of speaking in generalities by using generalities is a circular process, *i.e.*, it lands

you in the same spot where you began.

As to the issue of the base level, though, petitioner is correct that the maximum drug base

offense level in U.S.S.G. §2D1.1(c) has been reduced from 40 to a 38 (requiring 150 kilograms or

more of cocaine, not 500 or more).  This was done with amendment 505.  The applicable section

is *U.S.S.G.* § 1B1.10, which provides:

§1B1.10.  Reduction in Term of Imprisonment as a Result of Amended Guideline
Range (Policy Statement)

(a)    Where a defendant is serving a term of imprison-
ment, and the guideline range applicable to that
defendant has subsequently been lowered as a result
of an amendment to the Guidelines Manual listed in
subsection (c) below, a reduction in the defendant's
term of imprisonment is authorized under 18 U.S.C.
§ 3582(c)(2).  If none of the amendments listed in
subsection (c) is applicable, a reduction in the



defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement and thus is not authorized.

(b)     In determining whether, and to what extent, a reduction in the term of imprisonment is warranted for a defendant eligible for consideration under 18 U.S.C. § 3582(c)(2), the court should consider the term of imprisonment that it would have imposed had the amendment(s) to the guidelines listed in subsection (c) been in effect at the time the defendant was sentenced, except that in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served.

(c)     Amendments covered by this policy statement are listed in Appendix C as follows: 126, 130, 156, 176, 269, 329, 341, 371, 379, 380, 433, 454, 461, 484, 488, 490, 499, 505, 506, and 516.

As such, amendment 505 was retroactive. However, the petitioner's total offense level would still be 44, as she received four points for leadership and two points for obstruction. With a criminal history of I, she still would have received a life term.

*U.S.S.G.* § 1B1.10 does not mandate a resentencing. It only makes it discretionary for a court to do so. *United States v. Connell*, 960 F.2d 191, 197 (1st Cir. 1992); *United States v. Colon*, 961 F.2d 41, 44-46 (2nd Cir. 1992); *United States v. Marchello*, 13 F.3d 752, 758 (3rd Cir. 1994); *United States v. Holmes*, 13 F.3d 1217 (8th Cir. 1994); *United States v. Wales*, 977 F.2d 1323, 1327-28 (9th Cir. 1992); *United States v. Telman*, 28 F.3d 94, 96 (10th Cir. 1994); and *United States v. Vasquez*, 53 F.3d 1216, 1228 (11th Cir. 1995). Since resentencing is not mandated and petitioner's total offense level requires a life term, the court need not grant any relief as to this part of petitioner's motion.



3. <u>Plea Transcripts of Edward Osborne and Anthony Bowling</u> -- Without authority,

petitioner says that the government violated the *Jencks Act* by not ordering and providing copies

of the pleas of Edward Osborne and Anthony Bowling.[18]  The *Jencks Act*, in pertinent part,

provides:

> **§ 3500.  Demands for production of statements and reports of witnesses**
>
> (a) In any criminal prosecution brought by the United States, no statement or report <u>in the possession of the United States</u> which was made by a Government witness or prosecutive Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.
>
> (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.  If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

(Emphasis added).

Besides the fact that petitioner could have ordered a copy of these witnesses' pleas, they

were not in the possession of the government.  Transcripts of government witnesses are not

covered by the *Jencks Act.  United States v. Baker*, 358 F.2d 18, 19 (7th Cir.), *cert. denied*, 385

U.S. 869 (1966); *United States v. Munroe*, 421 F.2d 644, 645 (5th Cir.), *cert. denied*, 400 U.S.

---

[18]  The government's attorney has examined the plea transcripts of Edward Osborne, docket numbers 92-CR-80767 and 93-CR-50073, and Anthony Bowling, docket numbers 91-CR-50035 and 92-CR-50022, and learned that they were filed on June 1, 1995 and October 18, 1994, respectively.



851 (1970); *United States v. Harris*, 542 F.2d 1283, 1293 (4th Cir.), *cert. denied*, 430 U.S. 934

(1977); and *United States v. Isgro*, 974 F.2d 1091, 1094-95 (9th Cir.), *cert. denied*, 113 S.Ct.

1581 (1993).

As to the purported inconsistency which generates petitioner's purported complaint under

*Jencks* and *Brady* (*Brady v. Maryland*, 373 U.S. 83 (1963)), she says that Edward Osborne

testified that he sold drugs in 1993 whereas his plea transcript referred to stopping in 1991. (Brief

at p. 13). This argument is misleading.

Petitioner's cite at p. 13 of her brief for this argument is her Exhibit E at p. 17 which is the

sentencing transcript. Page 17 quotes the government's lawyer discussing his Supplemental Brief

Regarding Guidelines Issues (attachment ten to this brief) at p. 37. Page 37 is a quote of Edward

Osborne's taped contact with Michelle West on April 15, 1993 <u>after</u> he decided to cooperate with

the government and done in combination with the federal agents with whom he was cooperating.

See attachment 11, a portion of the trial transcript of December 6, 1993.

4. <u>Count Five Conviction</u> -- Petitioner says the government's lawyer agreed that she

should not have been convicted of count five (false statement). In support of her position, she

cites her Exhibit D at pp. 117-20. This consists of a passing reference from her trial counsel that

<u>he</u> did not think that the government's lawyer felt his client was guilty of this count. Rhetoric of

this sort has no legal significance as to whether or not there was sufficient evidence to sustain the

conviction before the court.[19]

---

[19] The evidence supporting this count was discussed in the government's appeal brief,
attachment three, at pp. 15-16.

## Conclusion

Based on the pleadings, the government respectfully requests that this honorable court

deny petitioner's motion under Title 18, United States Code, Section 2255.

Respectfully submitted,

SAUL A. GREEN
United States Attorney

Dated: 5-27-98

MARK C. JONES (P33325)
Assistant U. S. Attorney
210 Federal Building
600 Church Street
Flint, MI  48502
(810) 766-5177; (FAX) 766-5427

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHELLE WEST,

        Petitioner,

                            CRIM. NO. 93-CR-50028-02
                            CIVIL NO.  98-CV-40130
v.                          HON. PAUL V. GADOLA
                            MAG. JUDGE THOMAS A. CARLSON

UNITED STATES OF AMERICA,

        Respondent.

_____/

## CERTIFICATE OF SERVICE

It is hereby certified that service of respondent's Answer and Brief in Response to Petitioner's Motion Under Title 28, United States Code, Section 2255 has this _28th_ day of May, 1998  been made upon the petitioner's attorney by placing same in a prepostage paid envelope and depositing said envelope in the United States mail addressed to:

S. Allen Early
Attorney at Law
163 Madison Ave. #229
Detroit, MI 48226

Dated: ___5/28/98___

_Lois A. Biggs_
Lois A. Biggs, Secretary
U. S. Attorney's Office
210 Federal Building
Flint, MI  48502
(810) 766-5177

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

CRIMINAL NO. 93-CR-50028

v.

D-1   OLEE WONZO ROBINSON,
      a/k/a Olee Wonzo,
      a/k/a Wonzo Robinson,
D-2   MICHELLE WEST,
D-3   CYNTHIA HORRY, and
D-4   SHAWN EUGENE WIMBERLY,

Defendants.

_____/

STEWART A. NEWBLATT

**THIRD
SUPERSEDING
INDICTMENT**

THE GRAND JURY CHARGES:

<u>COUNT ONE</u>

(Continuing Criminal Enterprise)
(21 U.S.C. §848)

**D-1 Olee Wonzo Robinson**

That from about 1987 until May 1993, in the Eastern District of Michigan and elsewhere, OLEE WONZO ROBINSON, a/k/a Olee Wonzo, a/k/a Wonzo Robinson, defendant herein, unlawfully, wilfully, and knowingly did engage in a continuing criminal enterprise in that he unlawfully, wilfully and knowingly did violate Title 21, United States Code, Section 846, as alleged in Count Two of this Second Superseding Indictment, which violation was part of and constituted a continuing series of violations of Subchapter I of Chapter 13 of Public Law 91-513, Title II, 21, U.S.C. 801 <u>et seq.</u>, undertaken by OLEE WONZO ROBINSON, a/k/a Olee Wonzo, a/k/a Wonzo Robinson, in concert with at least five other persons with respect to whom OLEE

ATTACHMENT NO. ___1

WONZO ROBINSON, a/k/a Olee Wonzo, a/k/a Wonzo Robinson, occupied a

position as organizer, supervisor, and manager, and from which

continuing series of violations, OLEE WONZO ROBINSON, a/k/a Olee

Wonzo, a/k/a Wonzo Robinson, obtained substantial income and

resources; all in violation of Title 21, United States Code,

Section 848.

## COUNT TWO

(Conspiracy to Distribute Controlled Substances)
(21 U.S.C. §§841(a)(1), 841(b)(1)(A) and 846)

D-1 Olee Wonzo Robinson
D-2 Michelle West
D-3 Cynthia Horry
D-4 Shawn Eugene Wimberly

That from approximately 1987 until May 1993, in the Eastern

District of Michigan and elsewhere, OLEE WONZO ROBINSON, a/k/a Olee

Wonzo, a/k/a Wonzo Robinson, MICHELLE WEST, CYNTHIA HORRY, and

SHAWN EUGENE WIMBERLY, defendants herein, did knowingly,

intentionally and wilfully conspire, combine, confederate and agree

with each other and other persons to distribute cocaine, a Schedule

II controlled substance.

In furtherance of this conspiracy, OLEE WONZO ROBINSON and

MICHELLE WEST organized the distribution of hundreds of kilograms

of cocaine in the Eastern District of Michigan and elsewhere.  OLEE

WONZO ROBINSON and MICHELLE WEST created or used companies to give

the appearance of legitimacy to their organization, including, but

not limited to, Nightingale, Hart, Goldberg and Associates,

Universal Auto Leasing, Detroit Automotive, D & C Development,

2

M & M Mortgage and Associates, Creative Automotive, Detroit Auto Leasing, Budget Replacement Rent A Car, Nightingale Corporation, Town & Country Auto World, Rollins & Associates, First Chicago Home Equity Finance, Leasing Unlimited, Inc., and Automobile Seekers of America.  CYNTHIA HORRY and SHAWN EUGENE WIMBERLY assisted in the acquisition of cocaine for distribution by members of the conspiracy.

In furtherance of the conspiracy, various financial institutions and other organizations were provided with false statements, including false employment, earnings, and identifying information, from the purported companies created or used by members of the conspiracy, partially listed above.  These false statements were provided by and for members of the conspiracy and other narcotics traffickers to acquire expensive motor vehicles, homes and other items on credit, thereby concealing the illegal source of these traffickers' income.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846.

3

## COUNT THREE

(Drug Related Murder)
(21 U.S.C. §848(e)(1)(A))
(Aiding and Abetting)
(18 U.S.C. §2)

D-1 Olee Wonzo Robinson
D-2 Michelle West
D-3 Cynthia Horry

1.   The Grand Jury realleges Counts One and Two of this

Second Superseding Indictment as though fully set forth here.

2.   On or about June 23, 1989, in the Eastern District of

Michigan, OLEE WONZO ROBINSON, a/k/a Olee Wonzo, a/k/a Wonzo

Robinson, while engaging in and working in furtherance of a

Continuing Criminal Enterprise and while engaging in a Conspiracy

to Distribute over 5 kilograms of Cocaine, offenses punishable

under Title 21, United States Code, Sections 848 and 841(b)(1)(A),

and MICHELLE WEST and CYNTHIA HORRY, defendants herein, while

engaging in a Conspiracy to Distribute over 5 kilograms of Cocaine,

an offense punishable under Title 21, United States Code, Section

841 (b)(1)(A), counseled, commanded, induced, procured and caused

the intentional killing of Sherman Adam Christian, and such killing

resulted, and did aid and abet each other in doing so;

In violation of Title 21, United States Code, Section

848(e)(1)(A) and Title 18, United States Code, Section 2.

## COUNT FOUR

(Felon in Possession of Firearms)
(18 U.S.C. §922(g))

D-1 Olee Wonzo Robinson

4

That on or about March 22-31, 1988, in the Eastern District of Michigan, OLEE WONZO ROBINSON, a/k/a Olee Wonzo, a/k/a Wonzo Robinson, defendant herein, having been convicted in 1987 in the United States District Court for the Eastern District of Michigan of Fraudulent Concealment of Bankruptcy Assets, a crime punishable by federal law for a term exceeding one year, knowingly did possess six firearms, to wit:

1.   A 9mm Uzi,

2.   A Smith & Wesson, Model 13, .357 Magnum Revolver,

3.   A Smith & Wesson, Model 19, .357 Magnum Revolver,

4.   A Smith & Wesson, Model 36, 5-Shot Revolver,

5.   A Plainfield, .30 Caliber Carbine, and

6.   A Harrington and Richardson, Model Topper 88, 12-Gauge Shotgun;

in and affecting commerce; all in violation of Section 18, United States Code, Section 922(g).

## COUNT FIVE

(False Statements to Institution with Deposits Insured
by the Federal Deposit Insurance Corporation)
(18 U.S.C. §1014)

### D-2 Michelle West

That on or about May 5, 1989, in the Eastern District of Michigan, MICHELLE WEST, defendant herein, did knowingly make false material statements in a loan application for the purchase of a 1989 Honda to the First National Bank of Mt. Clemens, Mt. Clemens, Michigan, the accounts of said bank being insured by the Federal

Deposit Insurance Corporation, for the purpose of influencing the action of said bank, to wit:  false employment information, including false earning statements and false income tax returns; in violation of Title 18, United States Code, Section 1014.

## COUNT SIX

**(Laundering of Monetary Instruments)**
**(18 U.S.C. §1956)**

D-2 Michelle West

That from June 1989 until March 1990, in the Eastern District of Michigan and elsewhere, MICHELLE WEST, defendant herein, conducted a financial transaction affecting interstate commerce with the proceeds of specified unlawful activity, that is, the proceeds of narcotics distribution in violation of Title 21, United States Code, Sections 841(a)(1) and 846; fraudulent loan applications to insured institutions in violation of Title 18, United States Code, Section 1014; mail fraud in violation of Title 18, United States Code, Section 1341; and wire fraud in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and knowing that the transactions were designed to conceal and disguise the nature, location, source, ownership, and control of said proceeds, to wit: making payments totaling approximately $2,514.40 towards the purchase of a 1989 Honda; in violation of Title 18, United States Code, Sections 1956.

6

## COUNT SEVEN

**(False Statements to Institution with Deposits Insured
by the Federal Deposit Insurance Corporation)
(18 U.S.C. §1014)**

**D-1 Olee Wonzo Robinson**

That on or about July 26, 1988, in the Eastern District of
Michigan and elsewhere, OLEE WONZO ROBINSON, defendant herein, for
the purpose of influencing the action of the Marine Midland Bank,
Buffalo, New York, the accounts of said bank being insured by the
Federal Deposit Insurance Corporation, did knowingly make false
material statements in a loan application for the purchase of a
1988 Porsche, to wit:  false employment information and false
earning statements; in violation of Title 18, United States Code,
Section 1014.

## COUNT EIGHT

**(Wire Fraud)
(18 U.S.C. §1343)**

**D-3 Cynthia Horry**

That on or about May 26, 1989, in the Eastern District of
Michigan and elsewhere, CYNTHIA HORRY, defendant herein, having
devised a scheme and artifice to defraud Village BMW, Dayton, Ohio,
did cause to be wired in interstate commerce various writings, to
wit:  a lease application for a 1989 BMW with false employment
information, along with a false W-2, for the purpose of executing
such scheme and artifice to defraud; in violation of Title 18,
United States Code, Section 1343.

7

## COUNT NINE

(Laundering of Monetary Instruments and Aiding and Abetting)
(18 U.S.C. §§1956 and 2)

D-1 Olee Wonzo Robinson

That on or about November 15, 1990, in the Eastern District of Michigan, OLEE WONZO ROBINSON, defendant herein, did aid, abet, counsel, command, induce, and procure the conduct of a financial transaction affecting interstate commerce with the proceeds of specified unlawful activity, that is, the proceeds of narcotics distribution in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846; fraudulent loan applications with insured institutions in violation of Title 18, United States Code, Section 1014; mail fraud in violation of Title 18, United States Code, Section 1341; and wire fraud in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of said specified unlawful activities and knowing that the transaction was designed to conceal and disguise the nature, location, source, ownership, and control of the said proceeds, to wit:  making a downpayment of $80,194.54 on a Cessna Airplane; in violation of Title 18, United States Code, Sections 1956 and 2.

8

## COUNT TEN

**(Laundering of Monetary Instruments and Aiding and Abetting)**
**(18 U.S.C. §§1956 and 2)**

### D-1 Olee Wonzo Robinson

That on or about August 15, 1991, in the Eastern District of Michigan, OLEE WONZO ROBINSON, defendant herein, did aid, abet, counsel, command, induce, and procure the conduct of a financial transaction affecting interstate commerce with the proceeds of specified unlawful activity, that is, the proceeds of narcotics distribution in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846; fraudulent loan applications with insured institutions in violation of Title 18, United States Code, Section 1014; mail fraud in violation of Title 18, United States Code, Section 1341; and wire fraud in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and knowing that the transaction was designed to conceal and disguise the nature, location, source, ownership, and control of the said proceeds, to wit: making a payment of $42,567.00 on a 1991 Range Rover; in violation of Title 18, United States Code, Sections 1956 and 2.

9