UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE WEST,

       Petitioner,            CRIMINAL NO.   93-CR-50028-02
                                   CIVIL ACTION NO. 98-CV-40130-FL

  vs.

                                   HONORABLE PAUL V. GADOLA
                                   UNITED STATES DISTRICT JUDGE

UNITED STATES OF
AMERICA,

       Respondent.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**RECOMMENDATION**: The instant Motion to Vacate, Set Aside, or Correct Sentence should be denied as Petitioner has shown no violations of her federal constitutional rights from alleged ineffectiveness of trial counsel.

                    \*   \*   \*

Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence, by and through retained counsel, under 28 U.S.C. § 2255, on April 13, 1998, challenging the validity of her underlying federal convictions. Petitioner was convicted following a jury trial in December 1993 in the United States District Court for the Eastern District of Michigan of conspiracy to distribute controlled



substances (21 U.S.C. §§ 846, 841(a)(1), & 841(b)(1)(A)), drug-related homicide and aiding and abetting in drug-related homicide (21 U.S.C. § 848(e)(1)(A) & 18 U.S.C. § 2), making false statements to a federally insured institution (18 U.S.C. § 1014), and laundering of monetary instruments (18 U.S.C. § 1956). Petitioner was sentenced to life imprisonment on the drug-related homicide, thirty years on making a false statement to a financial institution and twenty years for money laundering. After sentencing, the Sixth Circuit Court of Appeals affirmed her convictions and sentence in a unpublished opinion dated September 5, 1996. United States v. Robinson, et al., 96 F.3d 1449 (table), 1996 WL 506498.

In her Motion to Vacate, Petitioner raises the following four issues:

> 1. Her trial jury was selected in violation of United States v. Ovalle, 136 F.3d 1092 (6th Cir. 1998).
>
> 2. She was denied the effective assistance of counsel when her attorney:
>
>> a) failed to object to evidence seized during an allegedly illegal search of her prison cell, and did not effectively defend her against Count six of the indictment (money

    laundering) by getting the court to grant a severance of this charge.

    b) failed to object to the district court's response to a jury question about the meaning of "drug-related murder", along with the original charge on the offense.

    c) failed to object to the drug quantity for which she was held accountable at sentencing, and for not pointing out to the court that her base level should be changed from 40 to 38 due to a retroactive change in the guidelines.

  3. The government violated the Jencks Act by not ordering and providing plea transcripts of prosecution witnesses Edward Osborne and Anthony Bowling.

  4. The prosecutor admitted after trial that Petitioner should not have been convicted of making a false statement, but nevertheless failed to prevent her from being given a 30 year sentence for that conviction.

The Respondent filed an answer to the Motion to Vacate on May 28, 1998, contending that Petitioner had waived her <u>Ovalle</u> challenge, that the overall performance of her counsel was within the range of that demanded of lawyers practicing criminal law, and that the allegations of a Jencks Act violation and prosecution misconduct were not legally or factually justified. The parties have also filed several replies to each other's answers (habeas docket #392,

3

399, 401-402, 404 and 410-411, 415) essentially repeating many of the allegations found in their original pleadings. The case was referred to the undersigned on June 3, 1998.

## THE FACTS

The facts upon which the challenged convictions are based can be excerpted from the unpublished opinion of the Sixth Circuit Court of Appeals on September 5, 1996:

> Defendants Olee Wonzo Robinson and Michelle West were the central figures in a sizable drug and money-laundering conspiracy in Southfield, Michigan. For a number of years, Robinson operated a car-leasing business in which West was an employee. As part of this "business," Robinson used false information to set up paper companies through which luxury cars, apartments, and even a Cessna airplane were obtained for his drug-dealing clientele and himself. Apparently, by channeling drug proceeds into financing arrangements for Range Rovers, Porsches, and similar cars, Robinson's operation managed to launder millions of dollars of drug money. Defendants also dealt cocaine directly in enormous quantities. According to government witness Anthony Bowling, West once showed him between 100 and 150 kilograms of cocaine in the trunk of her car. J.A. at 477. According to Edward Osborne, another witness, Robinson had him make frequent interstate trips to deliver and receive drugs. From California alone, Osborne

estimated that a total of 200 to 250 kilograms of cocaine had been obtained in Robinson's behalf.

In April 1989, Robinson and West were leaving their office when they were robbed at gunpoint of over $24,000. It turns out that the robber was someone they knew: Sherman Christian, another drug dealer and occasional boyfriend of West's friend, Cynthia Horry. Robinson soon responded by hiring Osborne (his trusted drug courier) and at least two others to find Christian and kill him, and Robinson paid the expenses and supplied the weapons needed to carry out the ultimate deed. After considerable searching, Osborne and his associates finally located Christian in June 1989. They followed his van on the highway, drew alongside it, and fired their guns into his side. Not only were they successful, their brutal act made the evening news. While watching the news on TV at Bowling's home, Robinson remarked to Bowling, "I told you I was going to get that [expletive deleted], didn't I[?]"

Christian's death satisfied not only the defendants' retributive instincts, but also their pocketbooks. West had previously arranged for Cynthia Horry to have Christian's life insured with Sun Life of Canada. Although the original beneficiaries on this policy had been Horry and her daughter (who was also Christian's daughter), the beneficiaries were soon changed under suspicious circumstances. The first attempt to make the change failed. On the second attempt, the policy was made payable to West as trustee for Christian's children (including Christian's son by his ex-wife, Deborah Christian). Deborah Christian promptly challenged the arrangement, once she learned about it, asserting that the letter from her lawyer which purportedly acceded to the arrangement was a fraud.

This dispute was eventually settled, with Deborah Christian and West dividing the proceeds equally. Not coincidentally, the witness on the change-of-beneficiary form had been Robinson, and Sherman Christian's signature on the form was later identified at defendants' trial as a forgery. At trial, the government also presented evidence showing that West had funneled her share of the insurance proceeds back into her illegal operations with Robinson.

In May 1993, federal authorities searched the defendants' homes and business premises pursuant to a warrant. Hundreds of items were seized, and many of these items were eventually admitted at trial. Although Robinson moved to suppress the evidence, arguing that the search warrant had not been supported by probable cause, the district court denied this motion.

While incarcerated and awaiting trial, West reportedly received threatening letters and phone calls from Robinson. Though West later denied being worried about the threats, the administrator of the jail testified that he had seen West in tears, expressing great concern over the safety of her daughter. Upon further investigation, the FBI obtained a search warrant and went through the papers in her cell, under protest by West. West claimed in a subsequent evidentiary hearing that the FBI had violated her Sixth Amendment right to counsel by viewing confidential, attorney-client communications. The government responded that the officials had studiously avoided all privileged documents--including all papers with her attorney's letterhead--and had looked only for evidence of Robinson's threats. In addition, West had not

demonstrated any prejudice. The district court denied relief on this claim.

Four days before the commencement of trial, the government amended Count Six of the indictment, which had charged West with laundering drug proceeds through payments on a 1989 Honda Civic. The indictment had previously described her actions as consisting of a $1,600 down payment on the Civic. When investigators learned that the "down payment" was really only a rebate, the government changed the indictment to state that West had made installment payments totaling $2,514.40. West objected to this last-minute amendment, and the district court seemed inclined to agree that the timing was somewhat unfair. However, the district court postponed its ruling on West's motion to sever/dismiss until the following week, telling the government, "So I'll leave it up to you to convince me between now and next Monday that [s]he's not been prejudiced. I don't know how you're going to do it." It appears that the issue was not revisited the next week. Later in the trial, West's attorney reminded the court that it had not yet ruled on the motion. The court then summarily denied the motion.

The trial itself began on November 9, 1993 and lasted until December 22, 1993. On the final day, during jury deliberations, the foreperson sent a note to the court with a single question: "Could you please further clarify what constitutes 'drug-related' in Count 3[?]" After consulting with the parties, the court responded, "In answer to your question above, I refer you to subparagraph (C) on page 38 of the Instructions as well as subparagraphs (A) and (B) on the same page." Subparagraph (C) on page 38 set forth the third

7

necessary element for finding defendants guilty under 21 U.S.C. § 848(e)(1)(A):

> (C) Third, that the defendant took these actions while engaging in or working in furtherance of either a continuing criminal enterprise or a conspiracy to distribute over 5 kilograms of cocaine.
>
> Working in furtherance of a continuing criminal enterprise or a conspiracy means to intentionally do any act or take any action to achieve the purposes of the continuing criminal enterprise [or the] conspiracy.

In other words, the court explained "drug related" to the jurors by specifically directing them to the language, "engaging in or working in furtherance of." The defendants did not object.

Robinson and West were ultimately convicted as charged. Co-defendant Cynthia Horry was also convicted on a few counts, although she was acquitted on the drug-related homicide charge. Horry's appeal was expedited, see United States v. Horry, 49 F.3d 1178, 1179 (6th Cir.1995). Co-defendant Shawn Wimberly remains a fugitive.

United States v. Robinson, 1996 WL 506498.

Standard of Review

A prisoner may seek relief from a conviction and/or sentence under 28 U.S.C. § 2255 if the prisoner can demonstrate that there are flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice. Boyer v. United States, 55 F.3d 296, 298 (7th Cir.), *cert. denied*, 516 U.S. 904 (1995); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir.), *cert. denied*, 508 U.S. 943 (1993). Such relief, however, is not available if the prisoner failed to raise the claim on direct appeal or in a prior collateral proceeding (if any), unless he or she establishes sufficient cause for, and prejudice resulting from, the failure to raise the claim earlier. Rule 9(b), Rules Governing 28 U.S.C. § 2255 Proceedings; McCleskey v. Zant, 499 U.S. 467, 489-96 (1991); United States v. Frady, 456 U.S. 152 (1982); Boyer, 55 F.3d at 298.

1. **JURY SELECTION METHOD**

Federal Rule of Criminal Procedure 12(b)(2) provides that "[d]efenses and objections based on defects in the indictment or information" must be raised prior to trial. The Sixth Circuit in United States v. Ovalle, 136 F.3d 1092 (6th Cir. 1998), indicated

9

that this rule "governs an untimely claim of discrimination in the selection of the grand jury 'even when such challenges are on constitutional grounds.'"[1] Id. at 1107 (quoting Davis v. United States, 411 U.S. 233, 238 (1973)). "'Challenges of the petit jury are treated the same as challenges of the grand jury.'" Id. (quoting United States v. Hearst, 638 F.2d 1190, 1196 (9th Cir. 1980)).

Unlike the defendants in Ovalle, the present Petitioner failed to take advantage of the opportunity to file a motion to dismiss or for stay of the trial proceedings before voir dire of the jury began. Counsel for Petitioner's co-defendant even admitted that he had the opportunity to inspect the jury pool list and file any motions he felt necessary, yet failed to do so. Trial Voir Dire

---

[1] The Sixth Circuit appears to create a standard inconsistent with the District Court's position in United States v. Greene, 971 F. Supp. 1117 (E.D. Mich. 1997). In Greene, the District Court found that the petitioner's constitutional claim based on discrimination need not be raised prior to trial per Fed. R. Crim. Pro. 12(b). The District Court stated that Shotwell Mfg. Co. v. United States, 371 U.S. 341 (1963), did not "stand for the proposition that Rule 12(b) requires constitutional challenges to be made prior to trial. Rather, in Shotwell, the trial court had denied a new trial motion challenging the jury selection process as untimely, and the Supreme Court simply found no abuse of discretion on the part of the trial judge in denying that motion." Greene, 971 F. Supp. at 1138. Yet, the Sixth Circuit, relying on both Davis and Shotwell, insists in the Ovalle opinion that constitutional claims of discrimination in the selection of a jury do indeed need to be raised in a timely fashion. Ovalle, 136 F.3d at 1107.

Transcript at 125-26. After the potential jurors were sworn by the trial judge, a generalized objection was made by defense counsel to the fact that not enough African-Americans were present, and cited to the Jury Selection and Services Act, 28 U.S.C. § 1861 ("J.S.S.A."), and several Sixth Amendment Supreme Court cases. See Holland v. Illinois, 493 U.S. 474, *reh'g denied*, 494 U.S. 1050 (1990); Duran v. Missouri, 439 U.S. 357 (1979); Taylor v. Louisiana, 419 U.S. 522 (1975). Yet, defense counsel did not assert that the jury pool itself was in violation of his client's statutory and constitutional right to a fair trial, but instead that the jurors that appeared for voir dire did not include enough African-Americans. Trial Voir Dire Transcript at 7-9, 122-26. The trial court pointed out that the applicable standard was not whether this particular subset of potential jurors violated the Petitioner's right to a fair trial, but rather whether the system for selecting the entire jury pool resulted in the systematic discrimination of a portion of the population. Id. at 8, 123-25. Petitioner's defense counsel did not raise any cognizable objection to the jury pool selection process itself. Yet Petitioner now attempts to raise this very issue in this collateral proceeding. Because Petitioner failed to properly preserve the issue in her criminal trial below and has not offered any sufficient reason for

11

failing to do so, her claim should be denied on this issue alone.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Typically, ineffective assistance of counsel claims are <u>not</u> cognizable on direct appeal. <u>United States v. Gonzales</u>, 929 F.2d 213, 215 (6th Cir. 1991); <u>United States v. Swidan</u>, 888 F.2d 1076, 1081 (6th Cir. 1989) ("This court will not review an ineffective assistance of counsel claim raised for the first time on appeal."). The customary procedure followed in this situation within the Sixth Circuit is to permit the defendant to raise his ineffectiveness of counsel claim in a proper post-conviction proceeding under 28 U.S.C. § 2255. <u>United States v. Castro</u>, 908 F.2d 85, 89 (6th Cir. 1990) ("Furthermore, although it strongly appears that defendant Rocha was not denied effective assistance of counsel, this court declines to consider the claim of ineffective assistance of counsel for the first time on appeal. The defendant may properly raise this issue in a motion to the district court pursuant to 28 U.S.C. § 2255.").

In order to establish an ineffective assistance of counsel claim, however, Petitioner has the burden of demonstrating that (1) his attorney made serious errors which undermined the proper functioning of the adversarial process, and that (2) but for those

errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). A defendant asserting a claim of inadequate counsel must satisfy both elements of the test; the defendant must demonstrate constitutionally inadequate assistance of counsel and prejudice resulting therefrom. Id. at 697. Judicial scrutiny of counsel's performance must be highly deferential, Id. at 689, and because of the difficulties in assessing counsel's performance, a reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (citing Michel v. New York, 350 U.S. 91, 101 (1955)).

The Petitioner has not met her burden here, and, upon review, the undersigned is persuaded that she has failed to show any serious errors in, or prejudice resulting from, her attorney's performance at trial or at sentencing. Contrary to Petitioner's assertion that she was denied the effective assistance of counsel when her lawyer failed to object to evidence seized by the FBI

after a search of her prison cell,[2] the FBI official in charge of the cell search testified that no attorney-client materials had been touched during the probe. Furthermore, a hearing before the trial judge was held on the possible seizure of privileged material and decided against her. Consequently, Petitioner cannot relitigate the claim again.

Contrary to Petitioner's contention that her attorney's failure to obtain a severance adversely affected her defense,[3] it is important to note that the trial court denied the severance motion only at the very end of a month and a half trial. Therefore, Petitioner effectively had more than just four days to prepare a "new" defense to the amended count; she had over six weeks, yet she was unable to refute the government's case. Moreover, the fact that the trial judge denied the motion at the end of the trial, after having observed the entire case, suggests

---

[2]Specifically, Petitioner maintained that some of the records seen by the FBI agents during the search of her cell was privileged material sent to her by her attorney, and their viewing by the agents may have compromised her defense.

[3]Petitioner claimed that her lawyer should have aggressively attempted to sever count six of the indictment that charged her with money laundering. As a result of her attorney's omission, she contends that she was denied an adequate opportunity to defend herself against the money laundering charge because the government amended the count only four days prior to trial.

that he did not believe a severance of the money laundering count would have benefitted Petitioner in any way. Accordingly, Petitioner's claim that she was denied the effective assistance of counsel by his failure to obtain a severance of the money laundering count should be rejected as she has shown no prejudice resulting from the alleged error.

Petitioner also complains that her attorney was ineffective for failing to object to a jury question during deliberations to define "drug related murder".[4] (issue 2b). Essentially, Petitioner claims that no evidence was presented by the government that she engaged in drug distribution related to the murder, or that she engaged in a continuing criminal enterprise related to the murder. This issue was extensively discussed and rejected by the Sixth Circuit panel on direct review. The appeals court found that the evidence was sufficient to uphold Petitioner's conviction (as to drug-related homicide) as an aider and abettor to her co-defendant

---

[4] As explained by the Sixth Circuit of Appeals in rejecting this claim, the jury asked about a phrase--"drug-related murder"--that was not really a part of the statutory offense but merely shorthand for a more cumbersome description--i.e., killing while "engaging in or working in furtherance of a continuing criminal enterprise, or [while] engaging in an offense punishable under section 841(b)(1)(A)." 21 U.S.C. § 848(e)(1)(A). The court's answer properly directed the jury back to the part of the instruction dealing with this more cumbersome description.

Robinson, and that the court's instruction on this charge did not affect the jury's verdict. As noted above, a § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances such as an intervening change in the law. <u>Dupont v. United States</u>, 76 F.3d 108, 110 (6th Cir. 1996).

There is also no merit to Petitioner's claim that counsel was deficient at sentencing for failing to adequately challenge the amount of drug quantity attributable to her (claim 2c). Petitioner was held accountable for 500 or more kilograms of cocaine resulting in a base level of 40. Prior to calculating the guidelines, the government filed a supplemental brief documenting the quantity of narcotics for which she should have been held responsible (See attachment #10 of Respondent's Answer). Petitioner also received a four point enhancement in the sentencing guidelines for the leadership role she played in the drug distribution enterprise, and a two point enhancement for obstruction under U.S.S.G. § 3C1.1. As a result, Petitioner has a total offense level of 46, which resulted in a life sentence. While Petitioner correctly points out that the maximum drug base level in U.S.S.G. § 2D1.1(c) has been retroactively reduced from 40 to 38 (requiring 150 kilograms or more of cocaine, not 500 or more), she still would have received a life term even if her total offense level was decreased from 46 to

44. Accordingly, Petitioner's claim that she was denied the effective assistance of counsel at sentencing should be rejected as he has shown no prejudice resulting from the alleged errors.

3. <u>JENCKS ACT/MAKING A FALSE STATEMENT</u>

Finally, Petitioner alleges that the government violated the Jencks Act by not ordering and providing copies of the pleas of Edward Osborne and Anthony Bowling (claim 3). She also claims that the government's lawyer agreed that she should not have been convicted of making a false statement to a federally insured institution (claim 4). Both of these claims can be quickly rejected as being without merit. Besides the fact that Petitioner could have ordered copies of Osborne and Bowling's guilty pleas, transcripts of government witnesses are not covered by the Jencks Act. <u>United States v. Baker</u>, 358 F.2d 18, 19 (7th Cir 1966); <u>United States v. Munroe</u>, 421 F.2d 644, 645 (5th Cir. 1970); <u>United States v. Harris</u>, 542 F.2d 1283, 1293 (4th Cir. 1977); <u>United States v. Isgro</u>, 974 F.2d 1091, 1094-1095 (9th Cir. 1993). Moreover, in support of her claim that the government's lawyer agreed that she should not have been convicted of making a false statement, Petitioner cites to the sentencing transcript (Exhibit D attached to Brief in Support) in which her attorney indicates that <u>he</u> did

17

not think that the government's lawyer felt his client was guilty of this count. The opinion of Petitioner's counsel has no legal significance in light of the sufficient evidence supporting the jury's verdict on this count.

For all the foregoing reasons, then, the undersigned recommends that the Motion to Vacate, Set Aside, or Correct Sentence be denied. The parties are advised that any objection to this Report and Recommendation must be filed with the Court within ten (10) days after they are served with a copy, or further appeal from Judge Gadola's acceptance thereof is waived.

*Thomas A. Carlson*
THOMAS A. CARLSON
UNITED STATES MAGISTRATE JUDGE

DATED: 10/27/98

cc: Honorable Paul V. Gadola
    S. Allen Early
    Mark C. Jones

PURSUANT TO RULE 77(d), FRCivP
COPIES HAVE BEEN MAILED TO THE FOLLOWING:

S. Early
Mark Jones

10-28, 1998

DEPUTY COURT CLERK